UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JERRY WILLIAMSON,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

**DECISION AND ORDER**

09-CV-202 (VEB)

## I. INTRODUCTION

In April of 2005, Plaintiff Jerry Williamson applied for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff subsequently applied for Supplemental Security Income ("SSI") benefits. Plaintiff alleges that he has been unable to work since May of 2004 due to back problems. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, acting *pro se*, filed this action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket No. 16).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a disposition. (Docket No. 24).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB on April 14, 2005, alleging disability beginning on May 28, 2004. (T at 39-41).[1]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On May 26, 2006, while his hearing request was pending, Plaintiff filed an SSI application. (T at 46-48).  A hearing was held on October 19, 2006, in Albany, New York before ALJ Carl E. Stephan.  (T at 210).  Plaintiff appeared, along with an attorney, and testified. (T at 212-232).

On November 21, 2006, ALJ Stephan issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying both benefit applications. (T at 16-21).  The ALJ's decision became the Commissioner's final decision on December 17, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-7).

Plaintiff timely commenced this action by filing a *pro se* Complaint on February 19, 2009. (Docket No. 1).  The Commissioner interposed an Answer on July 27, 2009. (Docket No. 17).  The Commissioner filed a Brief in opposition on December 8, 2009. (Docket No. 21).  Plaintiff filed a Brief in support of the action on December 29, 2009. (Docket No. 22).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further proceedings.

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 13).

### III. DISCUSSION

**A.      Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2004, the alleged onset date. (T at 16). The ALJ concluded that Plaintiff suffered from a severe muscuoloskeletal impairment, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined under the Social Security regulations. (T at 19). The ALJ found that Plaintiff could not perform his past relevant work as a truck driver due to heavy lifting required in connection with that job. (T at 19). The ALJ concluded that considering Plaintiff's age (50 years old), education (high school), and work experience (semi-skilled past relevant work experience), there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 20). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined under the Social Security Act, and was

therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on December 17, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-7).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments in support of this position. First, he contends that his impairment met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). Second, he argues that the ALJ did not properly assess his residual functional capacity ("RFC"). Third, Plaintiff asserts that the ALJ failed to adequately assess his credibility. Fourth, he contends that the ALJ erred by concluding that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. This Court will address each argument in turn. In so doing, this Court is mindful that a *pro se* litigant's pleadings and submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.2006).

#### a. The Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration

requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden, the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In this case, Plaintiff argues that his back impairment meets or medically equals Section 1.04 of the Listings. The impairment listed in §1.04 (disorders of the spine) involves a spinal disorder "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," accompanying by at least one of the three (3) conditions identified in subparagraphs (A), (B), and (C) of the Listing.

Plaintiff was diagnosed with degenerative disc disease in the lower lumbar spine. (T at 164). However, his impairment does not satisfy subparagraph (A) of § 1.04 because that subparagraph requires evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." Dr. John Whalen, a consulting orthopedist, found "[m]otor strength 5/5 in all muscle groups in the lower extremities" and sensation "grossly intact throughout." (T at 164). Dr. McGuire, Plaintiff's treating orthopedist, made similar findings. (T at 167, 173). Dr. Balagtas, a consultative examiner, found full muscle strength, intact sensation, and normal reflexes. (T at 134).

Plaintiff likewise does not satisfy the subparagraph (B) requirements of § 1.04, which requires evidence of spinal arachnoiditis,[3] "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." Plaintiff did not reference (and this Court did not find) any evidence in the record of spinal arachnoiditis.

The record also does not establish "[l]umbar spinal stenosis resulting in pseudoclaudication . . . [and] inability to ambulate effectively," as required to satisfy subparagraph (C).[4] The "inability to ambulate effectively" is defined under § 1.00B2b of the Listings as the inability to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Here, there is no indication of spinal stenosis

---

[3]"Spinal arachnoiditis is caused by the inflammation of the arachnoid lining in the spinal cord. The inflamation causes constant irritation, scarring, and binding of nerve roots and blood vessels." Corson v. Astrue, 601 F. Supp.2d 515, 526 (W.D.N.Y. 2009).

[4]"Pseudoclaudication is pain and discomfort in the buttocks, legs and feet due to narrowing of the spinal canal (spinal stenosis)." Id.

resulting in pseudoclaudication or an inability to ambulate effectively, as defined under the Listings.

In light of the foregoing, this Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in the Listings.

      **b.**    **RFC Assessment**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform a full range of light work activity, as defined under 20 C.F.R. § 404.1567 (b), 20 C.F.R. § 416.967 (b), and SSR 83-10. (T at 19). Specifically, the ALJ found that Plaintiff could walk, stand, and sit for 6 hours in an 8-hour work day. He also concluded that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. (T at 19).

This Court finds that the ALJ did not adequately develop the record concerning Plaintiff's RFC. Plaintiff's treating orthopedist, Dr. McGuire, opined that Plaintiff could not lift more than 10 pounds and could not sit or stand for more than 45 minutes at a time. (T at 165). Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the ALJ assigned "limited probative weight" to Dr. McGuire's assessment. In support of this decision, the ALJ opined that Dr. McGuire's assessment

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

10

was "predicated entirely" upon Plaintiff's subjective complaints. This finding is problematic in two respects. First, the Second Circuit has held that a patient's subjective complaints and history are "an essential diagnostic tool." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir.2003)) (referring to "a patient's report of complaints, or history, as an essential diagnostic tool."). Second, Dr. McGuire's limitations assessment was generally consistent with the findings of Dr. Balagtas, the consultative examiner, who opined that Plaintiff would have "some limitations in activities that require bending, lifting, prolonged sitting, standing, and . . . overhead activities." (T at 134).

The ALJ made no attempt to reconcile these findings with his RFC assessment. Notably, the ALJ discussed the portions of Dr. Balagtas's consultative report that favored his assessment (T at 17), but did not address her limitations findings or attempt to reconcile them with his conclusions. See Shaw v. Chater, 221 F.3d 126, 135 (2d Cir.2000) ("This 'pick and choose' approach to reviewing the evidence undermines the court's confidence in the ALJ's determination.").

In addition, the ALJ discounted Dr. McGuire's findings on the grounds that they were not supported by his clinical notes and, in the ALJ's opinion, contradicted by the MRI results and other clinical evidence. (T at 18). This is exactly the sort of "circumstantial critique by [a] non-physician[]" that the Second Circuit has cautioned "must be overwhelmingly compelling in order to overcome a medical opinion." Wagner, 906 F.2d at 862. Before rejecting Dr. McGuire's assessment on this basis, the ALJ had a duty to re-contact the orthopedist to explain the apparent discrepancy between his notes, the clinical evidence, and his assessment. It is well-settled that the ALJ has an "affirmative duty to develop the

record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error and grounds for a remand. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Moreover, the ALJ places great weight on a handwritten treatment note from February of 2006, which indicated that Plaintiff reported walking two miles a day. (T at 188). The ALJ referenced this report at least three times in his decision (T at 18-19), but never asked Plaintiff during the hearing to state whether the notation was accurate or to offer any explanation regarding the apparent contradiction in his statements concerning his ability to walk for extended time periods.[6] In addition, the ALJ referenced the fact that Plaintiff did not comply with prescribed treatment regimens, including physical therapy and an exercise program, in support of his findings. (T at 17-19). In general, it is proper for an ALJ to find a claimant's "statements . . . less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the

---

[6]In his Brief to this Court, Plaintiff denies making the statement. (Docket No. 22, at p. 7).

individual is not following the treatment as prescribed." SSR 96-7p. However, the ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id. In this case, the ALJ did not question Plaintiff regarding his apparent non-compliance with treatment, leaving the record materially underdeveloped in this regard.

The Commissioner notes that the ALJ's assessment is supported by the findings of the non-examining State Agency review consultant. (T at 136). However, such reports, "which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence." Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009). This is especially so where, as here, the ALJ did not adequately assess the treating physician's opinion, did not discuss the limitations noted by the consultative examiner, and the non-examining consultant's findings are contradicted, in material part, by the assessments of the treating physician and consultative examiner.

For the reasons outlined above, a remand is required. On remand, the ALJ will re-contact Dr. McGuire and will further develop the record concerning, for example, Plaintiff's alleged statement regarding walking two miles per day and Plaintiff's explanation, if any, for his apparent non-compliance with recommended treatment. In addition, the ALJ shall consider and discuss the limitations assessed by Dr. Balagtas.

**c.     Credibility**

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he can walk about 20 feet without difficulty and for about a block. (T at 227-228). He stated that he can sit for about 30 minutes and stand for approximately the same amount of time. (T at 227-28). The ALJ concluded that Plaintiff's testimony was not credible. (T at 18). In particular, the ALJ speculated that "if the claimant were [sic] interested in improving his medical condition, he would follow through with prescribed physical therapy." (T at 18). In addition, the ALJ opined the fact

15

that Plaintiff was not under orthopedic care at the time of the hearing "seem[ed] inconsistent with his allegations of significant neck and back pain." (T at 18).

The question of Plaintiff's credibility must be revisited on remand. As discussed above, the record must be further developed concerning Dr. McGuire's opinion and proper consideration must be given to the limitations assessed by the consultative examiner. Plaintiff's credibility must be reevaluated in light of the record as further developed. In addition, Plaintiff should be afforded an opportunity to address the treatment note indicating that he walked two miles a day, his apparent non-compliance with treatment, and the fact that he was not under orthopedic care. SSR 96-7p. Plaintiff was not given such an opportunity at the hearing. Indeed, the following exchange between Plaintiff and the ALJ is instructive and illustrative. The ALJ began the exchange by asking Plaintiff why he was no longer seeing Dr. McGuire (his treating orthopedist):

> A: Well, the understanding I got from the last time I came to a visit I explained to him that my – I was having this tremendous back pain and I was hoping that it probably be [*sic*] some kind of cure for it that it – I can get –
>
> Q: Just tell me why you don't see him anymore.
>
> A: Okay. Well, he told me, he say [*sic*] well, I can't do you no more good because I can't operate on you and I'd like to but I'm taking a big risk of doing it because you need to look at the matter as it was at least –
>
> Q: So he couldn't help you any longer?
>
> A: No. He said at least you –
>
> Q: Okay. That's all you need to tell me. You don't have to tell –
>
> A: Okay.

> Q:   – me anymore than that.
>
> A:   Okay.

(T at 217-18).  As can be seen, the ALJ did not afford Plaintiff a fair opportunity to explain why he was seeing Dr. McGuire.  To the extent it can be determined (which is difficult given the ALJ's interruptions and abrupt end to the inquiry), it appears Plaintiff believed Dr. McGuire would provide no further assistance with his problem.  Before concluding that the lack of orthopedic care "seems inconsistent" with allegations of disabling pain, the ALJ should have developed the record regarding Plaintiff's reasons for discontinuing such care and then given those reasons due consideration in assessing Plaintiff's credibility.

Lastly, Plaintiff had a lengthy work history, spanning more than 30 years. (T at 51).  This good work record should have been, but was not, given consideration in the context of the ALJ's credibility assessment.  See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

### d.   Use of the Grid

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").

See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grid was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ found that Rule 202.14 of the Grid required a finding of not disabled. However, the ALJ's consultation of the Grid was based upon his RFC assessment with regard to Plaintiff's physical limitations, namely that he was capable of performing light work. (T at 20). This determination was necessarily impacted by the ALJ's errors discussed above. As such, the step 5 analysis must be revisited on remand following reconsideration and further development of the record, as outlined above.

### 3.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm,

18

reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, this case is remanded for further proceedings consistent with this Decision and Order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Decision and Order.

          Respectfully submitted,

          Victor E. Bianchini
          United States Magistrate Judge

Dated: March 31, 2011

Syracuse, New York

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that the Clerk of the Court shall enter a judgment in favor of Plaintiff remanding this case to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Decision and Order.

SO ORDERED.
March 31, 2011

Victor E. Bianchini
United States Magistrate Judge